IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Arthur Smith, Jr., ) | No. CV 05-1556-PHX-JWS (ECV) |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| Dora Schriro, ) | |
| Respondent. ) | |

TO THE HONORABLE JOHN W. SEDWICK, UNITED STATES DISTRICT JUDGE:

Pending before the court is a Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254. Doc. #1.

**BACKGROUND**

Following a jury trial in Maricopa County Superior Court in 1998, Petitioner was convicted of two counts of Aggravated Assault. Doc. #1, Exh. 1. At the sentencing hearing on February 18, 1998, Petitioner was sentenced to consecutive prison terms of five years and ten years. Id. The count for which Petitioner was sentenced to ten years was designated as a "dangerous crime against children." Id. Petitioner filed a direct appeal and on December 31, 1998, the Arizona Court of Appeals affirmed the convictions and sentences in a Memorandum Decision. Doc. #1, Exh. 4. Petitioner did not seek review in the Arizona Supreme Court. Doc. #1 at 3.

Petitioner filed a notice of post-conviction relief on April 6, 1998, but no corresponding petition was ever filed. Doc. #1 at 3. The trial court dismissed the petition on December 3, 1998. Id. Petitioner did not seek review in the Arizona Court of Appeals or the Arizona Supreme Court. Id. On July 16, 2002, Petitioner filed a second notice and a petition for post-conviction relief. Id. The trial court dismissed the petition on November 4, 2002. Id. Petitioner's request for review to the Arizona Court of Appeals was denied on March 1, 2004. Id. Petitioner's subsequent petition for review to the Arizona Supreme Court was denied on August 17, 2004. Id. at 4. Petitioner then filed a petition for writ of certiorari to the United States Supreme Court, which the Court denied on January 10, 2005. Id.

On May 25, 2005, Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus in this court. Doc. #1. Respondents filed an Answer to Petition for Writ of Habeas Corpus on June 6, 2005. Petitioner filed a Reply on October 17, 2005. Doc. #10. On October 19, 2005, Petitioner filed transcripts from the trial and sentencing in state court. Doc. #11.

The Arizona Court of Appeals summarized the facts of the case in its Memorandum Decision:

> On December 19, 1996, defendant stopped his car in the Acoma Park parking lot in Phoenix. Several youths then approached defendant. Defendant retrieved a shotgun from his trunk, and fired several shots. Several witnesses observed the youths running away from the park. None of the alleged victims were injured. Following the incident, defendant drove away. Glendale police stopped and arrested defendant soon after. The police searched defendant's vehicle, and discovered marijuana.
>
> Defendant admitted firing the weapon, but claimed that he never aimed at the youths. He testified that the youths approached him yelling expletives, and that he heard a firearm "chambered." Defendant claimed that he fired only in self-defense.[1]
>
> Only two of the youths directly involved in the incident testified at trial, T.K. and J.L. They testified that they were "hang[ing] out" in the park with

---

[1] Prior to the incident, defendant had had several encounters with local gang members in the Acoma Park Locos ("APL") gang. Defendant alleged that he had been assaulted by gang members in the past, and feared for his safety on the day in question. However, evidence at trial suggested that T.K. and J.L. were not, in fact, APL members.

- 2 -

two other friends. They claimed that mistaking defendant for an acquaintance, they approached him in the parking lot. J.L. claimed that defendant began shouting about the "APL" (Acoma Park Locos gang) prior to the shooting. Both youths testified that defendant fired at them as they ran away.

## DISCUSSION

Petitioner argues in his petition that the state court's denial of his petition for post-conviction relief resulted in an unreasonable application of clearly established federal law. He contends that his right to due process was violated when the trial court determined that one of his offenses was a "dangerous crime against children" under Arizona law, despite the absence of evidence to support that determination. Petitioner also alleges that his attorney failed to raise this issue in the trial court, thus providing ineffective assistance of counsel. Petitioner also argues that his claims are not procedurally defaulted and that his petition should not be barred by the statute of limitations. Respondent contends in her answer that the petition should be dismissed because it was not filed within the statute of limitations period. Respondent further asserts that Petitioner's claims are procedurally defaulted. As explained below, the court finds that the statute of limitations bars Petitioner's claims. The court finds that Petitioner has failed to present a credible claim of actual innocence as a basis for equitably tolling the statute of limitations period. For these reasons, the court will recommend that the petition be denied.

**A.    Statute of Limitations**

**1.    Statutory Tolling**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. See 28 U.S.C. § 2244(d)(1). A state prisoner must file a federal petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); see also Lott v. Mueller, 304 F.3d 918, 920 (9th Cir. 2002). However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the

- 3 -

1 pertinent judgment or claim is pending shall not be counted toward" the limitations period.
2 28 U.S.C. § 2244(d)(2); see also Lott, 304 F.3d at 921.

3     In Arizona, post-conviction review is pending once a *notice* of post-conviction relief
4 is filed even though the petition is not filed until later. Isley v. Arizona Department of
5 Corrections, 383 F.3d 1054, 1056 (9th Cir. 2004). An application for post-conviction relief
6 is also pending during the intervals between a lower court decision and a review by a higher
7 court. See Biggs v. Duncan, 339 F.3d 1045, 1048 (9th Cir. 2003) (citing Carey v. Saffold,
8 536 U.S. 214, 223 (2002). However, the time between a first and second application is not
9 tolled because no application is "pending" during that period. Biggs, 339 F.3d at 1048.
10 Moreover, filing a new petition for post-conviction relief does not reinitiate a limitations
11 period that ended before the new petition was filed. See Ferguson v. Palmateer, 321 F.3d
12 820, 823 (9th Cir. 2003).

13     Here, Petitioner concedes that his habeas petition was not filed within one year of the
14 completion of direct review, nor does he argue that statutory tolling applies. Doc. #1 at 33.
15 The Arizona Court of Appeals issued its Memorandum Decision on December 31, 1998.
16 Petitioner then had thirty days to file a petition for review to the Supreme Court, which he
17 did not do. See Ariz. R. Crim. P. 31.19(a). As a result, the judgment became final on
18 January 30, 1999, the date on which the time for seeking further review expired. The statute
19 of limitations began to run on the following day and it expired one year later, on January 31,
20 2000. Petitioner filed his habeas petition on May 25, 2005, more than five years after the
21 deadline.

22     Petitioner filed a notice of post-conviction relief on April 6, 1998, while the case was
23 still on direct appeal. Petitioner failed to file an actual petition and the trial court dismissed
24 the post-conviction proceedings on December 3, 1998, before the completion of direct
25 review. As a result, Petitioner's first post-conviction proceedings did not toll the statute of
26 limitations period because the proceedings concluded before the direct appeal was
27 completed.

28

Additionally, Petitioner's second notice of post-conviction relief, filed on July 16, 2002, did not toll the statute of limitations. The second post-conviction petition was filed more than two years after the deadline to file a habeas petition had passed and therefore could no longer toll the limitations period. Having failed to find any basis for a statutory tolling of the limitations period, the court will consider whether equitable tolling applies here.

### 2.    Equitable Tolling Based on Actual Innocence

Petitioner argues that a credible claim of actual innocence tolls the statute of limitations and permits a federal court to reach the merits of a petitioner's habeas claims despite an untimely petition. Petitioner contends that he is actually innocent of the offense designated by the trial court as a "dangerous crime against children" and, therefore, the statute of limitations should be equitably tolled. Respondent does not appear to dispute that actual innocence may provide a basis for equitable tolling. However, Respondent argues that equitable tolling should not be applied here because Petitioner has not established a credible claim of actual innocence.

#### a.    Legal Standards

"AEDPA's statute of limitations provision is subject to equitable tolling." Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002). However, as a general rule, equitable tolling is not available in most cases and may be applied only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Here, Petitioner seeks to expand the application of the equitable tolling doctrine by arguing that a claim of actual innocence should excuse an otherwise untimely petition. Neither the Supreme Court nor the Ninth Circuit has decided the legal question of whether a credible claim of actual innocence equitably tolls, or otherwise overrides, the AEDPA statute of limitations. See Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002). At least one federal appeals court, the Sixth Circuit, has held that "equitable tolling of the statute of limitations based upon a showing of actual innocence is appropriate." Souter v. Jones, 395 F.3d 577, 602 (6th Cir. 2005). Unless the court first determines that

- 5 -

Petitioner has presented a credible claim of actual innocence, the legal question of whether such a claim tolls the statute of limitations is not properly before the court. See Majoy, 296 F.3d at 777 (remanded to district court to determine if petitioner could establish credible claim of actual innocence before deciding legal question of whether such a claim would toll the statute of limitations). Accordingly, the court will consider whether Petitioner has presented a credible claim of actual innocence.

Petitioner bases his actual innocence claim on the Arizona Supreme Court's decision in State v. Williams, 175 Ariz. 98, 854 P.2d 131 (1993) (en banc). The court in Williams considered whether the enhanced penalties for someone convicted of a "dangerous crime against children," applied to a defendant who, while drunk, crashed his truck into a station wagon and injured a fourteen year old boy who was riding inside. Id. To qualify as a "dangerous crime against children," one of several designated offenses, including aggravated assault, must be "committed against a minor under fifteen years of age." A.R.S. § 13-604.01(M)(1). The defendant in Williams was convicted of "aggravated assault for recklessly causing physical injury using a dangerous instrument...." Williams, 175 Ariz. at 99, 854 P.2d at 132. Because the victim of the aggravated assault was under the age of fifteen, the trial court determined the offense was a "dangerous crime against children" and applied the enhanced penalties. Id.

The Arizona Supreme Court rejected the trial court's determination and remanded the case for re-sentencing after concluding that a "defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen" before the "dangerous crimes against children" penalties can apply. Id. at 103, 854 P.2d at 136. The court reasoned that "the enactment of § 13-604.01 was calculated to reach criminals who prey specifically upon children" but not those "who fortuitously injure children by their unfocused conduct." Id. at 102-03, 854 P.2d at 135-36. The court further held that a defendant did not have to know the victim was under fifteen. Id. at 103, 854 P.2d at 136. The court found that although the defendant drove his pickup truck in a very dangerous and aggressive manner, "there was no evidence that his behavior was directed at or focused upon the victim, or that

he was even aware of the minor's presence in the station wagon." Id. at 104, 854 P.2d at 137. The court therefore concluded that the defendant did not commit a "dangerous crime against children" under § 13-604.01.

More recently, the Arizona Supreme Court applied its holding in Williams to a case involving the shooting of a fourteen year old girl. State v. Sepahi, 206 Ariz. 321, 78 P.3d 732 (2003) (en banc). In Sepahi, the defendant was convicted of aggravated assault for shooting the girl in the stomach. Id. at 321-22, 78 P.3d at 732-33. The girl was on the front porch of a trailer with the adult owner of the trailer when the defendant and his friend approached and talked to the adult about gang affiliations. Id. After becoming concerned that the incident could turn into a fight, the girl asked the two to leave and threatened to fight them both when they refused. Id. at 322, 78 P.3d at 733. The defendant hit the girl on the arm, and she responded by hitting him on the head. Id. He then pulled out a gun and fired the shot to her stomach. Id. In addition to being convicted of aggravated assault, the trial court found the offense to be a "dangerous crime against children." Id.

Applying Williams, the Arizona Court of Appeals held that although the defendant's conduct was focused on the victim, the offense was not a "dangerous crime against children" because there was no evidence he was particularly dangerous to children or that he posed "a direct and continuing threat to the children of Arizona." Id. at 323, 78 P.3d at 734 (citing State v. Sepahi, 204 Ariz. 185, 189, 61 P.3d 479, 483 (App. 2003)). The Arizona Supreme Court reversed, concluding that the Court of Appeals misapprehended Williams and the language of A.R.S. § 13-604.01 by requiring proof of a defendant's continuing dangerousness to children. Id. at 323, 78 P.3d at 734. The court reaffirmed the holding in Williams that a "dangerous crime against children" determination requires proof of one of the enumerated offenses and conduct that "'focused on, directed against, aimed at, or target[ed] a victim under the age of fifteen.'" Id. at 324, 78 P.3d at 735 (quoting Williams, 175 Ariz. at 103, 854 P.2d at 136.)

**b.     Application**

Here, Petitioner argues that as in <u>Williams</u>, there is no evidence that he targeted Tony Kennedy, the victim upon whom the "dangerous crime against children" finding was based. Petitioner contends that pursuant to <u>Williams</u>, the trial court was required to make a factual finding that he targeted Kennedy before it could conclude the offense was a "dangerous crime against children." Petitioner argues that in the absence of any evidence "that [his] unfocused conduct targeted the only victim who was under the age of 15, no reasonable factfinder could have found that [he] committed a Dangerous Crime Against Children." Doc. #1 at 17. Accordingly, Petitioner claims that he is "actually innocent" of the "dangerous crime against children."[2]

The court finds that the facts of this case do not support a credible claim of actual innocence under <u>Williams</u>. The evidence established that several youths approached Petitioner when he stopped his car in the Acoma Park parking lot. Kennedy testified that he was one of those youths. Petitioner then retrieved a shotgun from his trunk and fired several shots. Petitioner himself testified that he fired two shots into the air, two shots into the ground and one shot in between the youths after they had split up. Doc. #11, Exh. D at 40-41.

The court disagrees with Petitioner's characterization that his conduct was unfocused and not targeted at Kennedy. Unlike the defendant in <u>Williams</u> who apparently was unaware that the victim was even in the car, Petitioner saw the youths, including Kennedy, walking toward him. Petitioner reacted by firing his shotgun several times. Through its verdict, the jury found that Petitioner intentionally placed Kennedy in reasonable apprehension of imminent physical injury. <u>See</u> A.R.S. § 13-1203(A)(2). Petitioner's conduct was focused on and targeted at the youths he saw walking toward him.

---

[2] Petitioner does not argue that he is "actually innocent" of the underlying aggravated assault convictions against Kennedy or the other victim, Justin Lizardi. He only contends that he is actually innocent of the "dangerous crime against children" determination applied to the offense against Kennedy, the only victim who was under age fifteen.

- 8 -

Petitioner seems to argue that because he did not aim or fire the shotgun directly at Kennedy, his conduct did not "target" the boy and therefore the offense against the boy was not a "dangerous crime against children." Petitioner further contends that the conduct was "unfocused" because it was not directed at one particular victim. The court does not read the standard set forth in Williams so narrowly. Nothing in Williams limits a "dangerous crimes against children" determination to offenses involving only one victim. Williams offers no support to conclude that a violent offense targeted at several victims falls outside the scope of such a determination. Moreover, as applied to a shooting offense, the court does not interpret the Williams standard to literally require the gun itself to "be focused on, directed against, aimed at, or target a victim under the age of fifteen," as Petitioner suggests with his argument. The overall conduct must be aimed at the victim, not necessarily the gun. The court has no difficulty concluding that Petitioner's conduct was sufficiently targeted at Kennedy, as one of several victims, to warrant a "dangerous crimes against children" determination.[3]

**B.     Conclusion**

For the foregoing reasons, the court finds that Petitioner has not presented a credible claim of actual innocence. Petitioner has presented no other basis to apply equitable tolling. Absent any basis to toll the statute of limitations, Petitioner's habeas corpus petition was untimely and is barred. In determining that the petition is barred by the statute of limitations, the court need not address the other arguments raised in the petition. The court will therefore recommend that the petition be denied and dismissed with prejudice.

---

[3] Respondent makes a compelling argument that Petitioner's actual innocence claim is insufficient because it alleges a legal insufficiency rather than factual innocence. Doc. #9 at 8-9. Respondent argues that a valid claim of actual innocence requires new evidence that was not presented at trial and became available only after trial. Id.; see Ross v. Berghuis, 417 F.3d 552 (6th Cir. 2005) (court discusses but does not decide whether equitable tolling should be extended to "innocence of the penalty" claims or restricted to actual innocence claims based on new evidence). Because the court finds that Petitioner has not presented a credible claim of actual innocence based on a legal insufficiency, the court need not address the distinction raised by Respondent.

1  **IT IS THEREFORE RECOMMENDED:**

2  That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1)
3  be **DENIED** and **DISMISSED WITH PREJUDICE**;

4  This recommendation is not an order that is immediately appealable to the Ninth
5  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
6  Appellate Procedure, should not be filed until entry of the district court's judgment. The
7  parties shall have ten days from the date of service of a copy of this recommendation within
8  which to file specific written objections with the Court. See, 28 U.S.C. § 636(b)(1); Fed. R.
9  Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have ten days within which to file a
10 response to the objections. Failure to timely file objections to the Magistrate Judge's Report
11 and Recommendation may result in the acceptance of the Report and Recommendation by
12 the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114,
13 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the
14 Magistrate Judge will be considered a waiver of a party's right to appellate review of the
15 findings of fact in an order of judgement entered pursuant to the Magistrate Judge's
16 recommendation. See Fed. R. Civ. P. 72.

17 DATED this 12th day of May, 2006.

*/s/ Edward C. Voss*
Edward C. Voss
United States Magistrate Judge